UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARTHA D. KING** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 07-00671-RET-DLD** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | |

### MAGISTRATE JUDGE'S REPORT

Plaintiff Martha D. King seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) benefits.

### *Background*

Martha D. King protectively filed an application for benefits on March 7, 2005, alleging a disability onset date of October 15, 2004, due to a "disabling condition." (TR 39).[1] The application was denied initially and on reconsideration, and a hearing subsequently was held on March 13, 2007. The plaintiff, her counsel, and a vocational expert appeared and testified at the hearing. (TR 398-406) Plaintiff, who was born on October 18, 1955, was 49 years old at the time of the alleged disability onset date, and had completed the 12th grade. She obtained a florist license, and her past relevant work was as a florist.

---

[1] Plaintiff does not identify her "disabling condition" in her application for benefits. Curiously, the Field Office Disability Report contains no information whatsoever, but does state that plaintiff brought medical records to the Field Office. (TR 53). However, the initial disability determination lists a primary diagnosis of cervical disc herniation and a secondary diagnosis of main splenic artery aneurysm. (TR 389)

In denying plaintiff's claims, the Commissioner's administrative law judge ("ALJ") reached the fifth and final step of the five-step sequential disability analysis set forth in 20 C.F.R. § 404.1520(b)-(f) & 416.920(b)-(f).[2] The first two steps involve threshold determinations. The ALJ initially determined that plaintiff had not engaged in substantial gainful employment since her alleged onset date of disability, thereby satisfying the first step in the sequential process. (TR 16) At the second step, the ALJ determined that plaintiff suffered from the following severe impairments: cervical disc disease with spinal cord compression; insulin dependent diabetes mellitus; hypertension; aneurysm; and right kidney tumor, which imposed more than slight limitations on the plaintiff's ability to engage in work-related activities. (TR 14)

At step three of the process, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or were medically equivalent to the criteria of one of the listed impairments set forth in the Commissioner's regulations at 20 C.F.R. pt. 404, subpt. P, Appendix 1. (TR 14) The ALJ then determined that plaintiff had a functional capacity[3] ("RFC") to perform light work, with some limitations.[4]

At step four of the sequential process, the ALJ determined that plaintiff was unable to return to her past relevant work. (TR 17) The burden then shifted to the Commissioner

---

[2] *See, e.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

[3] Residual functional capacity ("RFC") is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), *citing* SSR 96-8p.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 CFR 404.1567

at step five of the process to show that plaintiff could perform significant numbers of jobs existing in the national economy, consistent with plaintiff's medical impairments, age, education, past work experience (if any), and RFC. *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001). Based upon the substantial evidence in the record, including the testimony of a vocational expert during the administrative hearing, and relying on the medical-vocational guidelines as a framework for decision, the ALJ determined that plaintiff was able to perform a significant number of jobs in the national economy, including positions such as correspondence and order clerk; interviewer; information clerk; and administrative support worker. (TR 18) The ALJ therefore concluded that plaintiff was not disabled for purposes of the Social Security Act. (TR 18)

### *Statement of Errors*

In her present appeal, plaintiff alleges the following grounds for reversal of the Commissioner's decision: (1) the ALJ erred in his RFC by failing to take into consideration other impairments; (2) The ALJ erred by placing more evidentiary weight on the medical practitioners' opinions rather than the treating physician's opinions; and (3) The ALJ erred in making a credibility finding not based upon substantial evidence.

### *Medical History*

The medical records in this case begin on June 14, 2000, when plaintiff complained of fatigue, which the doctor determined could be related to her diabetes. (TR 177). Plaintiff was seen on February 26, 2001, for musculoskeletal pain in her flank, but no treatment was indicated. (TR 175) A visit of March 7, 2001 reflects that her hypertension control was "suboptimal," and the status of her diabetes was awaiting laboratory test results. (TR 176).

On June 6, 2001, plaintiff complained of stress-related headaches, and back pain. Her diabetes was noted, along with her controlled hypertension. (TR 174) On September 5, 2001, plaintiff complained about leg and knee pain, numbness in her hands and feet, and depression/anxiety. The doctor noted that her hypertension was controlled, but she had stopped taking her diabetes medication when she "ran out" of it. She was prescribed pain medication and knee exercises, along with a refill of her diabetes medication. (TR 173) There is no medical evidence in the record for 2002.

On April 4, 2003, plaintiff stated she was not taking any medications for either her diabetes or hypertension, and she was referred for CT scans for her back pain. (TR 325) Plaintiff next saw a physician on April 11, 2003, and reported that her knee pain improved on Vioxx. (TR 322) Except for medication refills, there are no other records for 2003.

On a June 8, 2004, visit to the doctor, plaintiff stated she was "off all DM meds." (TR 319). On June 16, 2004, plaintiff reported that her pain was relieved on Vioxx, and she had not started her insulin yet. (TR 318) At a July 6, 2004, visit, plaintiff complained that she had swelling in her hands and legs with Vioxx, but when she stopped the Vioxx, it was "greatly improved." (TR 317) The record reflects three visits to a physician in December, 2004, for complaints of neck pain, and depression. On December 27, 2004, a abdominal CT scan indicated that plaintiff had a "tiny right renal hamartoma" and a 12 mm splenic artery aneurysm. (TR 120). There is nothing in the record to indicate that any treatment was recommended for either condition.

On January 4, 2005, the MRI of plaintiff's cervical spine indicated disc and posterior osteophytic ridging at C5-6 level causing moderate narrowing of the neural canal and some cord flattening, but no signal change. At C6-7 level, the same disc and posterior

osteophytic ridging was seen, with some cord signal edema and moderate narrowing of the neural canal. There was also a tiny disc bulge at the C4-5 level without significant narrowing of the neural canal. (TR 117-118)

Plaintiff was next seen on February 15, 2005, at the Neuromedical Center for her complaints of neck pain and low back pain.[5] The plaintiff demonstrated a "full range of motion" of the cervical spine, and no tenderness over the cervical thoracic, and lumbar spine. She was diagnosed with cervical disc herniation with cord compression and cervical cord edema, along with low back pain of unclear etiology. The physician indicated that she should see a neurosurgeon regarding the cervical cord edema. (TR 126-127). On February 16, 2005, the MRI of plaintiff's thoracic spine indicated several small multilevel disc protrusions and bulging, but no gross canal or foraminal stenosis. The MRI of her lumbar spine, taken the same day, was unremarkable. (TR 111-112) Nerve conduction studies taken on March 24, 2005, indicated mild right carpal tunnel syndrome. On March 26, 2005, plaintiff was seen in the emergency room for her "acute thoracic pain" and uncontrolled diabetes. She was prescribed Ultram and Lortab upon discharge. (TR 138) At the ER follow-up visit of April 11, 2005, plaintiff complained of neck pain, but stated it was helped with Ultram and Lortab. (TR 284) Dr. Meek referred the plaintiff to a comprehensive diabetes program on April 18, 2005. (TR 283) It is unknown from the record whether plaintiff attended the program.

It is at this point, however, that plaintiff underwent a Residual Functioning Capacity ("RFC") exam. Plaintiff's RFC of April 28, 2005, included a primary diagnosis of cervical

---

[5]There are also a few very brief visits of December 2004, February 1, 2005, and March 18, 2005, regarding plaintiff's continuing complaints of back or neck pain, depression, and numbness in arm.

disc herniation and a secondary diagnosis of main splenic artery aneurysm. The limitations established by the RFC were: 1) occasional lifting or carrying 20 pounds; 2) frequently lifting and carrying 10 pounds; 3) standing or walking for about 6 hours in an 8-hour workday, with normal breaks; 4) sitting about 6 hours in an 8-hour workday, with normal breaks; 5) unlimited pushing and/or pulling; and 6) some postural limitations.[6] (TR 164-171) The examiner noted plaintiff's small right renal hamartoma, along with the results of the spinal MRI's and the nerve conduction studies. Plaintiff self-reported that she was able to do dishes, cook some, do laundry without heavy lifting, but has problems with overhead reaching, all statements which appeared credible and consistent with the objective evidence. (TR 169).

Following the RFC, Dr. Mitchell ordered another cervical spine MRI. This new MRI of May 6, 2005, was compared to the January 2005 MRI, and this MRI demonstrated "very similar findings, particularly at the C6-7 level with early spinal stenosis and minimal spinal cord edema versus gliosis." (TR 371) The next medical record is a July 1, 2005, visit for arm pain and depression. Plaintiff reported she had not started on her anti-depressive medication yet. The cervical stenosis was noted, along with plaintiff's complaints that the numbness in her arm was worse when doing laundry. (TR 271) At an October 12, 2005, visit, plaintiff complained of arm pain, headaches and neck pain. Her diabetes and cervical stenosis were noted. (TR 254) At a March 22, 2006, visit, plaintiff complained about "eating problems." Her depression and anxiety were noted, along with pain. (TR 228)

---

[6] 20 CFR §404.1567, defines the physical exertion requirements of light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

At an August 10, 2006, visit with Dr. Mitchell, plaintiff's chief complaints were continuing neck and low back pain, but was only having to take 8-10 Ultram a day for the pain, and she said this really helped her pain. Her diabetes control was "fairly adequate." Dr. Mitchell noted that her range of motion was "carried fair" in all planes, both in her cervical and lumbar spines. Dr. Mitchell's impression was that plaintiff had "moderately severe cervical disc herniation with cord compression," "degenerative cervical disc disease," and "degenerative lumbar disease with chronic low back pain." She apparently told him that she had applied for Social Security benefits, and he agreed with her course of action. (TR 179-180).

The plaintiff then saw Dr. Bradley Meeks on September 19, 2006, complaining about her hands going numb more often. Dr. Meeks noted her chronic pain, along with the fact that she had been referred for surgery. Dr. Meeks noted that plaintiff was refusing the surgery. (TR 198) The plaintiff returned to Dr. Meeks on November 10, 2006, with complaints relating to gastroenteritis. Dr. Meeks noted that plaintiff "has held insulin last 2-3 days and hasn't checked HGM. She took off Fentanyl patch 2 days ago, also." (TR 196) It is at this point that the records fall silent.

### *Governing Law*

In reviewing the Commissioner's decision to deny disability and SSI benefits, the Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *E.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist,

but the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision.  *Id.*  Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion.  *Id.*  A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position.  *Id.* .  In order for the Court to find there is "no substantial evidence" supporting the ALJ's conclusions, this court "must conclude that there is a 'conspicuous absence of credible choices' ..." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir.1983) (*citing Hemphill v. Weinberger*, 484 F.2d 1137 (5th Cir.1973)).

The overall burden of proving disability under the Social Security Act rests on the claimant.  *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  If a claimant proves that she no longer is able to work in her prior job, then the burden shifts to the Commissioner to show that there is some other type of substantial gainful activity that the claimant can perform.  *Id.*  Thus, in cases such as this one where the Commissioner determines that the claimant cannot perform her past relevant work and accordingly reaches the fifth step of the five-step disability sequential analysis, the Commissioner bears the burden of establishing that there is other work in the economy that the claimant can perform.  *Perez v. Schweiker*, 653 F.2d 997, 999-1000 (5th Cir. 1981).  If the Commissioner adequately points to potential alternative employment, the ultimate burden of persuasion then returns to the claimant to prove her inability to perform those jobs.  *Kraemer v. Sullivan*, 885 F.2d 206 (5th Cir. 1989); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir. 1980).

Also, if an impairment reasonably can be remedied or controlled by medication, surgery, treatment or therapy, it cannot serve as a basis for a finding of disability. *Picou v. Commissioner of Social Sec.,* Slip Copy, 2008 WL 237017 (W.D. La.2008*); Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir.1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987). Furthermore, failure to comply with the prescribed treatment precludes a claimant who is otherwise disabled from being eligible for disability benefits. *Johnson v. Sullivan*, 894 F.2d 683, 685 (5th Cir. 1990).

### *Discussion*

The issue before this Court is whether the Commissioner's finding that Martha D. King is not disabled is supported by the substantial evidence and was reached by applying the proper legal standards. 42 U.S.C. § 405(g).

Plaintiff does not dispute the ALJ's finding relating to plaintiff's cervical disc disease with spinal cord compression; insulin dependent diabetes mellitus; hypertension; aneurysm and right kidney tumor. The ALJ discussed the conditions he found to be severe, including plaintiff's history of failing to comply with medical treatment to alleviate the conditions. Even though the law does not support a finding of disability where the claimant fails to comply with prescribed treatment, the ALJ nevertheless considered the limitations resulting from the conditions as set out in the medicals, even though those conditions could have been improved with treatment. There is nothing in the record to indicate that these conditions are episodic or that the plaintiff's condition waxes and wanes. The ALJ treated her limitations in combination as overall limitations of her ability to work and restricted her to light work status with some limitations.

The plaintiff, however, argues that , the plaintiff suffers from the following additional conditions: depression and swelling of legs and joints; conditions which, when combined with her other impairments, render her disabled because she is unable to be employed on a sustained basis.  She complains that these additional conditions were not considered by the ALJ in the RFC, and that the ALJ failed to place the proper weight on a statement by one of plaintiff's treating physicians.

Although plaintiff fails to clearly articulate her argument, one of her main contentions appears to be that the ALJ did not properly evaluate her subjective complaints and failed to make the requisite credibility findings when he rejected plaintiff's testimony. In particular, the plaintiff claims that the ALJ's rejection of her testimony is at odds with the examiner's finding in her original RFC.  For example, plaintiff states that the RFC examiner found her statements regarding her symptoms to be generally credible, but the ALJ found them to be less than credible.  (rec. doc. 18).  At the time of April 2005 RFC, the objective medical evidence indicated that plaintiff had a small right renal hamartoma and splenic artery aneurysm, along with cervical disc herniation with cord compression and cervical cord edema, back pain of unknown etiology, and mild right carpal tunnel syndrome. (TR 165-166). Plaintiff self-reported at that examination that she had diabetes, back problems, a splenic aneurysm, a kidney tumor, and high blood pressure.  She reported that she could do dishes, cook some, do laundry without heavy lifting, but had problems with overhead reaching, which is the testimony the examiner found to be consistent with the objective medical evidence (TR 169).  Based on these limitations, the examiner found that the plaintiff was capable of performing light work with some limitations.  At the hearing, plaintiff testified that she could help her daughter cook, and does laundry, vacuuming, and

sweeping on "good days." (TR 402). This testimony is consistent with plaintiff's prior statements, and the RFC used by both the examiner and the ALJ are identical.

Plaintiff had additional testimony at the hearing, however, that differed from her self-reported limitations to the RFC examiner – and it is these limitations which were not incorporated into the RFC given by the ALJ. At the hearing, plaintiff added that she had swelling in her legs and arms, an inability to walk farther than to the mailbox and back, and an inability to lift and hold ten (10) pounds. It is this testimony that the ALJ found not credible, at least in part, and it was not incorporated into the RFC at the hearing.

The law requires the ALJ to make affirmative findings regarding a plaintiff's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir.1981)). In this case, the ALJ did not totally reject the plaintiff's testimony. What the ALJ found is that while the plaintiff's medically determinable impairments could "reasonably be expected to produce the alleged symptoms, " the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (TR 16).

The plaintiff argues that the importance of her testimony at the hearing is that her additional conditions of depression[7] and swelling in her legs and joints, singly, or when combined with her other impairments, resulted in a substantial loss of ability to meet the demands of basic work-related activities on a sustained basis, and that the hypothetical

---

[7] The plaintiff did not mention anything whatsoever about depression at the hearing. The only time depression is mentioned is in the medical records.

11

presented to the vocational examiner at the hearing failed to include an RFC with these further limitations.

The evidence in the record, however, reflects that plaintiff, who was represented by counsel, presented no testimony at the hearing regarding depression. The medical evidence further indicates that any depression she may have had was treated with medication; and no physician recommended any further treatment for the depression, whether that be mental health or psychiatric treatment, and mentioned no corresponding limitations. Similarly, the evidence in the record indicates that any swelling experienced by plaintiff was resolved with either exercise or medication, and that the swelling was "mild edema." Again, no physician recommended any other treatment for the swelling or alluded to any resulting physical limitations. Plaintiff fails to cite to any part of the record, such as physicians' reports, which indicate that her doctors considered her depression and swelling issues that would limit her ability to perform work on a sustained basis or affect her RFC. The only evidence in the record of further limitations beyond those noted in the original RFC resulting from any of her conditions is plaintiff's own very brief statement that she can walk only to the mailbox and back and cannot lift ten pounds.

Insofar as plaintiff's subjective complaints are concerned, the plaintiff has pointed to no objective medical evidence in the record to support the plaintiff's subjective complaints at the hearing. On the contrary, there is sufficient evidence to support the ALJ's credibility determination regarding plaintiff's complaints, and the ALJ thus adequately explained his reasons for rejecting plaintiff's subjective complaints. *Falco*, 27 F.3d at 164. The ALJ specifically found that the medical evidence did not indicate a substantial change

since 2005.  On the objective medical evidence presented in this case, the ALJ acted well within his discretion in concluding that plaintiff's subjective complaints were not of a disabling severity.  *E.g., Harrell*, 862 F.2d at 479-82; *Dominick v. Bowen*, 861 F.2d 1330, 1333 (5th Cir. 1988); *Hollis v. Bowen*, 837 F.2d 1378, 1384-85 (5th Cir. 1988).  Moreover, as a general matter, the ALJ is not required to specifically explain each piece of evidence that he accepts or rejects.  *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).  To the extent that Social Security Ruling 96-8p might require more articulation in this case regarding assessment of plaintiff's RFC, any error by the ALJ would at best be harmless.[8]

Furthermore, when plaintiff was offered an opportunity to examine the vocational examiner about her RFC at the hearing, she failed to do so.  (TR 405). The law requires only that the ALJ must "incorporate reasonably all disabilities of the plaintiff recognized by the ALJ," in the hypothetical and must afford the claimant or her representative the opportunity to correct any deficiencies in the ALJ's question by mentioning or suggesting to the expert any purported defects.  *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). In this case, the ALJ reasonably incorporated those disabilities found in the medical evidence and in plaintiff's testimony in the VE hypothetical, and he afforded the plaintiff's representative an opportunity to cross-examine the expert, which the plaintiff chose not to do. When plaintiff's counsel failed to address the VE with any questions regarding plaintiff's

---

[8] In *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994), the Fifth Circuit stated in *dicta* that "[n]o jurisprudential authority for the application of a 'harmless error' analysis [in social security disability cases] is cited, and we are aware of none."  36 F.3d at 438.  The Court would note that Fifth Circuit social security disability cases prior to *Bowling* have utilized a "harmless error" analysis.  *See Morris v. Bowen*, 864 F.2d 333, 334-336 (5th Cir. 1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *see also Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).  This earlier circuit precedent on the issue is controlling under the Fifth Circuit's rule on resolution of intra-circuit conflicts.  *E.g., Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997).

limitations on her ability to perform sustained light work, plaintiff acquiesced to the hypothetical presented to the VE and derailed her argument that the ALJ did not consider the cumulative effects of her impairments on her ability to work on a sustained basis. This is not a case where the plaintiff was appearing *pro se*, which would have triggered a heightened duty by the ALJ to develop the record; this is a case where plaintiff had competent counsel at the hearing but failed to raise any issues whatsoever regarding the effect of her alleged limitations, including the depression and swelling, the light work RFC or the allegedly inadequate hypothetical.

Plaintiff's next contention is that the ALJ gave improper evidentiary weight to the opinions of physicians who were not plaintiff's treating physicians. (rec. doc. 18, at 2). Or perhaps more accurately, the ALJ did not base his decision on a comment by Dr. Mitchell in an August 10, 2006, progress note. The plaintiff does not contest the ALJ's findings with regard to the plaintiff's impairments, with the exception of the aforementioned depression and swelling, but rather plaintiff complains that the ALJ did not accurately assess the limitations associated with plaintiff's back problems. In particular, the plaintiff claims that Dr. Mitchell clearly found plaintiff to be disabled and that her condition is progressive and not curable. He bases this contention on Dr. Mitchell's statement that "she is applying for social security disability which would be our recommendation." (TR 180)

First, the Commissioner is not bound by a treating physician's conclusion that the plaintiff is disabled, as the question of whether an individual is disabled for purposes of the Social Security Act is a matter that can be determined only by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 484 n.13 (5th Cir. 1985); *Barajas v. Heckler*, 738 F.2d 641, 645

(5th Cir. 1984). Thus Dr. Mitchell's apparent approval of plaintiff's applying for benefits is not dispositive or entitled to any particular weight. The ALJ specifically mentioned Dr. Mitchell's statement and disagreed with that statement.

The second part of Dr. Mitchell's statement simply does not say what plaintiff wants it to say. Plaintiff's treating physician, Dr. Mitchell, agreed with the objective medical evidence that plaintiff has "moderately severe cervical disc herniation with cord compression"; however, he also, for the first time, classified her cervical disc disease as degenerative, and "not curable and progressive" in his note of August 10, 2006 (TR 180). Paradoxically, in the same report he opines that plaintiff needs surgical intervention for this condition, indicating that her condition can be improved. (TR 180). Also, regardless of the name of plaintiff's back condition or its underlying cause, Dr. Mitchell did not ascribe any further limitations than those that already existed arising from her condition. Even assuming the plaintiff's back condition is progressive and ultimately not curable, there is nothing in the record to contradict the ALJ's findings with regard to the plaintiff's limitations for the pertinent period of time in the instant matter. That the plaintiff may be ultimately disabled sometime in the future should her condition continue to deteriorate is not the issue. The issue is her condition during the pertinent time period. None of Dr. Mitchell's objective medical findings suggest any further limitations than those already noted.

The lumbar spine MRI ordered by Dr. Mitchell in February 2005 was unremarkable (TR 111-112). Further, although Dr. Mitchell ordered another cervical spine MRI following plaintiff's RFC, no other lumbar spine MRI was ordered for comparison to the previous MRI, even though Dr. Mitchell later determined that she had degenerative lumbar disease.

15

Additionally, Dr. Mitchell's report indicated that "her range of motion is carried fair in all planes, both of the cervical and lumbar spines,", which does not support a finding of further limitations.  (TR 179) Plaintiff cites to no legal authority for the proposition that a treating physician's opinion which is unsupported by clinical or laboratory findings is entitled to substantial weight.

Even if Dr. Mitchell's sparse notes could be read to show a marked change in plaintiff's condition with attendant, more severe limitations, the ALJ did not abuse his discretion in this instance.  Generally, the standard in the Fifth Circuit is that unless good cause is shown to the contrary, the opinions, diagnoses and medical evidence of a treating physician must be accorded substantial weight, particularly where the treating physician is familiar with the patient's injuries, course of treatment, and responses over a considerable length of time.  E.g., *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  However, there are exceptions to the principle requiring that considerable weight be given to the treating physician's medical evidence.  See, *e.g.*, *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  For example, the Commissioner acts well within his discretion when he discounts an opinion of a treating physician that is only conclusory in nature without any supporting clinical or laboratory findings, as is the case here.  *Scott*, 770 F.2d at 485; *Jones v. Heckler*, 702 F.2d 616, 621 (5th Cir. 1983); *Oldham v. Schweiker*, 660 F. 2d 1078, 1084 (5th Cir. 1981).  In the final analysis, any conflicts in the medical evidence are to be resolved by the Commissioner, not by the courts.  *E.g., Oldham*, 660 F.2d at 1084. Thus, good cause has been shown for the exception to the general "substantial weight" rule in the Fifth Circuit, and there is substantial

evidence to support the ALJ's decision regarding the evidentiary weight to be given Dr. Mitchell's opinion of August 10, 2006.

Based on a review of the record and considering that the ALJ is afforded considerable deference in making credibility determinations, the court finds that the ALJ's decision that the plaintiff was not disabled under the applicable law and regulations should be upheld.

## RECOMMENDATION

Accordingly, it is the recommendation of the magistrate judge that the decision of the Commissioner denying supplemental security income benefits ("SSI") and disability insurance benefits ("DIB") to Martha D. King be **AFFIRMED** and plaintiff's complaint be **DISMISSED** with prejudice.

Signed in Baton Rouge, Louisiana, on March 30, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**

17

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARTHA D. KING** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 07-00671-RET-DLD** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 30, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**